IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Charles Christopher Williams,

        Petitioner,

-vs-

Bryan Stirling, Director, SCDC
And Joseph McFadden, Warden
Lieber Correctional Institution,

        Respondents.

CA N. 6:16-cv-1655-JMC-KFM
**CAPITAL CASE**

### AFFIDAVIT OF JOHN INGLIS MAULDIN

John Inglis Mauldin who, first being duly sworn, states and deposes as follows:

1. I was lead counsel for Christopher Williams in the capital case of South Carolina v Charles Christopher Williams.

2. It was known to the defense team that the client's mother, Daisy Huckabee, was drinking alcohol during her pregnancy with Chris Williams. There was no strategic reason for not investigating, developing and presenting evidence that the client may have suffered from alcohol related developmental disorders.

3. I am presently informed that Chris Williams has been diagnosed by medical experts with partial FASD and that those experts have testified that, at the time of the crime, Chris Williams' ability to conform his behavior to the requirements of the law was substantially impaired.

4. I knew at the time of the trial that if an individual lacked the capacity to conform his conduct to the requirements of the law, he would be eligible for a guilt phase jury charge of guilty but mentally ill. This charge would have been based upon *SC Code Ann.*, § 17-24-20(A). If I had the compromised capacity testimony at the time of trial, I would have requested such a charge and pursued a verdict of guilty but mentally ill to further "front-load" the mitigation case during the guilt phase of the trial.

5. I also knew at the time of the trial that, in a capital case any evidence that the defendant's ability to conform his conduct to the requirements of the law would support a

1

request that the court charge the jury: "The General Assembly has set forth certain conditions as statutory mitigating circumstances which, if found, may reduce a defendant's moral culpability and may support a life sentence." *SC Code Ann.*, § 16-3-20(b)(6) states: "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." I would have had no strategic reason not to request this charge.

6. If the capacity to conform his conduct and the impaired adaptive functioning evidence had been available at the time of trial, it would have bolstered the guilt phase presentation and supported Dr. Robert W. Richards' testimony. I testified during the post-conviction merits hearing that: "It [evidence of organic brain damage] would have been a logical connection to present that testimony at guilt phase, as well as the bipolar testimony." (Page 160). The evidence of diminished capacity and substantially impaired adaptive functioning would have been pressed to the maximum extent possible and I know of no strategic reason not to have investigated, developed and presented that evidence.

7. At the time of trial I knew that Dr. Robert W. Richards was not called as a *forensic* psychiatrist. I also knew that, during the guilt phase of a capital trial, the only legally relevant evidence to be offered by a psychiatrist would be either lack of capacity to conform conduct or inability to distinguish right from wrong. Other than to front-load the existence of a mental illness, there was no strategic reason to present an expert psychiatric witness who was not qualified by education, training or experience to answer cross-examination questions as to these relevant points.

8. Had the diminished capacity and impaired adaptive functioning evidence been available at trial, I could have argued that Chris Williams was not eligible for a death sentence on the basis that his biological condition was an Atkins equivalency (*Atkins v. Virginia*, 536 US 304 (2002)). Extending the Supreme Court's capital jurisprudence to Williams' case is in keeping with that Court's continuous sequential narrowing of the scope of capital eligible cases when the defendants suffer with significant mental impairments.

9. Although suggested by Chris Williams' diagnosis; by the client's serious attempt at suicide a few weeks prior to the crime; by the family mental health history; and by Dr. Robert W. Richards' reports and requests, insufficient consideration was given to additional genetic testing. There was no strategic reason not to have pursued a genetic study as it was a logical outgrowth of the known facts and given trial counsel's duty to investigate, develop and present favorable guilt and mitigation phase evidence.

10. The bio-psychosocial assessment did not include the medical consequences to Chris Williams resulting from his mother's drinking during the pregnancy and it did not include the biology with which Chris Williams suffered as those features have now been developed during the post-conviction case. It did not include the impaired adaptive functioning assessments that

are associated with FASD. When asked at the post-conviction hearing: "Q: Okay. And you knew that part of the social history, essentially at the time you went to trial, had some gaps; correct? A: Yes sir. Yes Sir. Q: Yet you still presented the social history as you understood it, through Dr. Hammock? A: That's right." (PCR Trans p. 205). The bio-psychosocial assessment was inadequate and there was no strategic reason for presenting it as it existed at the time of trial.

11. There was no strategic reason not to include evidence of Chris Williams' remorse as part of the mitigation case.

Sworn to before me this 30th day of January, 2017.

Bernice H. Anderson
Notary Public for South Carolina
My Commission Expires: 10/28/2024

JOHN INGLIS MAULDIN