# Affidavit of Marjorie Brittain Hammock, LISW-CP, MSW

1. I live at 233 Northlake Road, Columbia, SC 29223 and my private practice as a Social Work Consultant is located in Columbia, SC. My date of birth is 01/24/1936

2. I have been in the practice of social work for 55+ years. I received my MSW from Howard University in 1969. For approximately 16 years I have been qualified as and served as an expert witness/Social Historian in death penalty cases.

3. In February, 2005 I testified as the Social Historian expert in the death penalty trial of Charles Christopher Williams. Mr. Williams received the death penalty. For a period of months before the trial I worked with the mitigation investigator and defense attorneys to collect bio-psychosocial information, review school, medical, psychological and other records toward providing a comprehensive history. My work also included interviewing the client, his mother and father, and other key informants.

4. I do not have a full recollection of details about Mr. Williams' case but I can recall interviewing Chris, his mother (Daisy Huckaby) and father (Dwight Williams) and working with the mitigation specialist in the case, Jan Vogelsang and the attorneys John Mauldin and Bill Nettles. I recall that I was not able to cover Chris's relationship with his father completely.

5. I recall that we tended to have to focus on Daisy, as she was the most demanding of attention, difficult to interview and extract information from (for a variety of reasons, including her mental health and alcoholism) and she was unpredictable. It was such a challenge to get specific information from her that we may have had to focus on her to the under-pursuit of other informants.

5. One of my first reactions in thinking about this case today is to wonder how we all missed Chris's Fetal Alcohol Syndrome. I question that to this day. I am not sure why we did not pick up on the possibility of FASD, but it was important.

6. I feel that there should have been more examination and exploration regarding Chris's teachers; it seemed we needed more interviews with teachers and school personnel.

7. I remember that, at the time I served as Social Historian on this case, Chris was very withdrawn, isolated and had poor social skills and poor judgment.

8. There was a lack of adequate communication among the defense team (attorneys, mitigation specialist) and myself and other experts. Looking back, I'm not exactly sure what we all wanted. Everything seemed forthcoming, but looking back, there was an issue with getting all of the information from all of the experts and communicating/sharing that among the team and experts. I believe that there were key sets of information that simply were not shared with me. This impacted how comprehensive I was able to be in, for example, the critical biological and neurobiological piece of the bio-psychosocial history. One example is that I later learned that Dr. Jim Evans, neuropsychologist, examined Chris and found (through testing) evidence of brain damage in the parietal cortical area; he said further that Chris had an indentation in his head in that very area from being hit with a hammer around age 5. I do not believe that I was aware of that important fact and

1

thus did not include it in my testimony. I testified about him being a special needs child but this head injury was a critical piece of the biological/neurobiological aspect of the biopsychosocial history. Another example of neurobiological issues that were missed is that Chris's Uncle Bryant Williams had epilepsy and that Chris, Dwight and Maureen (preliminarily) had been diagnosed with Bipolar Disorder, which is frequently inherited. ALL data as to mental illness and neurobiological damage/congenital damage needed to be available to me so that I could testify to the high risk intersection of these factors.

9. I remember that Chris's home was riddled with chaos, drinking, fighting and unpredictability. We did not provide enough detail on the level, frequency and type of violence in the home (both to mother and children). The jury was not provided with a detailed, descriptive picture of the level of violence in Chris's home. I do not know that all available ER, family practice records and police reports were provided to me.

10. I have learned that Chris suffered sexual abuse/molestation in childhood, by both his Uncle Bryant and his mother. This is an issue that should have been heard by the jury and was not covered. If I had been able to access this information I would have been able to testify, in a compelling way, about this abuse, and been able to educate the jury as to the impact of sexual abuse (especially in combination with all other factors) on his functioning.

11. The family history/genogram needed to include Chris's mother's side of the family. The information available on Chris's mother's side (Daisy Huckaby's German side) was almost non-existent. Though it was determined that her mother, Erika Shedd, and Daisy's three half-siblings lived in Idaho, there was apparently no effort to contact them, and thus I didn't have any information from them. This would have been vital in many ways, especially in terms of family history of mental illness, violence, suicidality or genetic issues. The team also apparently made the decision not to seek contact with Daisy's family in Germany (including Aunts and Uncles who may have been able to provide such information.) The history and genogram that I was able to use at trial was therefore quite limited in scope and could be considered inadequate.

12. In retrospect, there were issues with a lack of communication of detailed vital information. The biological information was not investigated, developed or presented to me and thus was not included by me as part of the assessment. Likewise, the extent of psychiatric medical conditions of bipolar affective disorder and suicidality were missing from my factual basis, as was a history of head injury in Chris. Details missing to me and specific incidents of violence suffered and/or witnessed by Chris and his sister and the sexual abuse of Chris by his Uncle Bryant and his mother would have affected Chris' moral culpability for the crime but were not able to be provided to the jury as part of my assessment.

Signed _Marjorie D Hammock_

Date _01/21/2017_

Sworn to and Subscribed before me this _21st_ day of _January_, 2017

_Evelyn J Phillips_

Notary Public/SC Commission Expires _2/11/2021_

2