IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Charles Christopher Williams,
          Petitioner,

-vs-
                                CA N. 6:16-cv-1655-JMC-KFM
                                 **CAPITAL CASE**

Bryan Stirling, Director, SCDC
And Joseph McFadden, Warden
Lieber Correctional Institution,
          Respondents.

## AFFIDAVIT OF DEREK JOSEPH ENDERLIN

Derek Joseph Enderlin who, first being duly sworn, states and deposes as follows:

1. I was lead counsel in the capital post-conviction case of Charles Christopher Williams v South Carolina, 2010-CP-23-9792.

2. I engaged Drs. Connor, Adler and Brown as a medical team of diagnosticians who specialize in fetal alcohol spectrum disorder to review Chris Williams' case. The result was a positive diagnosis of partial FASD that had not been investigated developed or presented by trial counsel.

3. Dr. Connor, Adler and Brown testified at length during the post-conviction merits hearing. During the time I spent with these experts on multiple occasions the issue of genetics was mentioned in areas such as bipolar affect disorder. I knew that Chris Williams was diagnosed with bipolar disorder so during the merits hearing I asked Dr. Brown: "So would the bipolar affect his executive functioning or the adaptive functioning?" Her answer was: "The bipolar would exacerbate the problem of mood management, And in Mr. Williams' case, he also had genetic or hereditary component in his mood illness. His father had a significant depressive disorder, psychotic at times. And so that genetic predisposition, that would only increase the mood control problem." (PCR Trans p 671).

4. I knew that Chris Williams' familial medical history was remarkable for suicidality and that many of his problems were associated with frontal lobe executive function components of the brain which impaired his self-regulation or behavior control as described by Dr. Brown in her testimony. (PCR Trans. p. 644, 646, 650, 654-55). I knew that just a few weeks prior to the offense of conviction Chris Williams made a "serious" suicide attempt. I knew that Chris's sister committed suicide during the PCR and another half-sister died in Germany. I also knew, as Dr. Brown testified, that Chris Williams' impairments were multiple and included conditions that had "biological" substrates. (PCR Trans p. 727).

5. Nonetheless, I never commissioned any inquiry into a genetic survey that would have 1) identified with objective certainty every genetic aberration or deletion that would be manifested in symptoms like poor adaptive functioning, suicidality, depression, impaired executive functioning as well as genetic problems that may not be particularized by a specific behavioral/symptom set;

1

and 2) provided the exact measure of severity of the condition by determining the length of the aberration or deletion. There was no strategic reason for not investigating developing and presenting the genetic issue.

6. As lead trial attorney John Mauldin testified at the PCR merits hearing, the bio-psychosocial assessment as presented to the jury was deficient. (PCR Trans. p. 205). The assessment presented to the jury failed to include a history of TBI, sexual molestation of Chris Williams over a period of fourteen years, and it failed to include a sufficient multi-generational investigation. The paucity of information presented to the jury was inadequate to convey the unique characteristics of the client. The post-conviction effort at completing the bio-psychosocial assessment and the global mitigation presentation was limited primarily to FASD and how that condition would have influenced the outcome. There was no strategic reason for not fully investigating developing and presenting a complete assessment of the unique characteristics of Chris Williams.

7. The post-conviction case developed the evidence that, on September 3, 2003, Chris Williams' capacity to conform his behavior to the requirements of the law was substantially impaired. (PCR Trans p. 727). However, no specific charge of ineffective assistance of trial counsel was articulated and pursued in the post-conviction case that linked the impaired capacity to trial counsel's failure to request that GBMI be charged to the jury during the guilt phase and trial counsel's failure to request that the court charge paragraph six of the statutory mitigation provisions. There was no strategic reason for failing to articulate and pursue these two particular issues.

8. The post-conviction case raised the issue of whether the use of the term "recommendation" during the charge and on the written jury verdict forms was misleading. The application did not include a global allegation of ineffective assistance of trial counsel in failing to object to the combined error of framing the sentence 1) as a "recommendation"; 2) that a verdict of life must be unanimous; and 3) that the Allen charge was coercive both a) in its language and b) by charging it twice compounding the error. There was no strategic reason for failing to articulate and pursue this particular issue to a ruling.

9. Many of the issues set forth in this affidavit could have been addressed and cured but for time and money. This was the fifth death penalty case I was appointed on. It was by far the most complex. It consumed my law practice. I was appointed on December 21, 2010, and the final PCR order was signed on August 9, 2013. In 2010 I acquired 43 new clients in my regular practice. In 2011 I accepted 28 new clients. In 2012 I accepted 5 new clients. In 2013 I accepted 4 new clients. Nonetheless, collateral counsel did not file a motion to continue the merits hearing date to provide the opportunity to complete the investigation development and presentation of the evidence. There was no strategic reason for not filing the motion to continue.

Sworn to before me this _20_ day
Of January, 2017.

_____
Notary Public for South Carolina
My Commission Expires: _May 21 '17_

_____
DEREK JOSEPH ENDERLIN

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Charles Christopher Williams,

           Petitioner,

-vs-

Bryan Stirling, Director, SCDC
And Joseph McFadden, Warden
Lieber Correctional Institution,

           Respondents.

CA N. 6:16-cv-1655-JMC-KFM
**CAPITAL CASE**

## AFFIDAVIT OF DEREK JOSEPH ENDERLIN

Derek Joseph Enderlin who, first being duly sworn states and deposes as follows:

1. I was lead counsel in the capital post-conviction case of Charles Christopher Williams v South Carolina, 2010-CP-23-9792.

2. I have reviewed pages 2190-2199 of the trial transcript. There was no strategic reason for not challenging trial counsel's failure to object to this testimony as violating the restrictions on victim impact testimony as set forth in *Payne v Tennessee*, 501 US 808 (1991) and there was no strategic reason for not articulating a specific IAC claim on this issue.

3. I have reviewed page 2204 along with 2190-2199 and note that the witness Tina Smith and the client were crying while the jury was present. I have reviewed Chris Williams' letter to Dr. Seymour Halleck. There was no strategic reason for not challenging trial counsel's failure to include remorse as an element of the mitigation case and argument to the jury and there was no strategic reason for not articulating a specific IAC claim on this issue.

Sworn to before me this **3/** day
Of January, 2017.

Notary Public for South Carolina
My Commission Expires: **09 · 18 · 2017**

DEREK JOSEPH ENDERLIN

1